1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER T. JACKSON,

        Plaintiff,

  v.

D. BRIGHT, et al.,

        Defendants.

No. C 12-06020 YGR (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; ADDRESSING PLAINTIFF'S PENDING MOTIONS; ORDER TO SHOW CAUSE RE: SANCTIONS; AND SETTING BRIEFING SCHEDULE**

## INTRODUCTION

Plaintiff Christopher T. Jackson, is a state prisoner incarcerated at that California Training Facility ("CTF").  On November 27, 2012, he filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that prison officials at CTF were deliberately indifferent to his serious medical needs.

In an Order dated February 13, 2013, the Court summarized the facts relating to the constitutional violations alleged by Plaintiff and found that he stated a cognizable claim, as follows:

> Plaintiff's allegation that he suffers from "severe pain in his back caused by old injuries" -- including "fractur[ing] his back in two places and in 2003 re-injur[ing] his back" -- supports an inference that he has serious medical needs. (Compl. at 3.)  Liberally construed, Plaintiff's allegations that prison medical staff failed to provide adequate medical treatment for his condition -- while he was housed there in 2012 -- state a cognizable deliberate indifference claim against the named Defendants.

(Feb. 13, 2013 Order at 2.)  Specifically, the Court found Plaintiff stated a cognizable Eighth Amendment claim against the following Defendants at CTF: Chief Physician and Surgeon D. Bright; Chief Medical Officer ("CMO") R. Delgado; Chief Executive Officer ("CEO") G. Ellis; Registered Nurse L. Fernandez; and Physicians Anise Adams and R. Javate.  The Court ordered service of the complaint on these Defendants.  Otherwise, the claims against the Doe Defendants were dismissed without prejudice.

Before the Court is Defendants Adams, Bright, Delgado, Fernandez and Javate's motion pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Plaintiff's complaint for failure to

**United States District Court**
For the Northern District of California

1  exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).  Plaintiff filed an

2  opposition to the motion, and the aforementioned Defendants filed their reply.

3      On January 30, 2014, Defendant Ellis filed a motion to join the aforementioned Defendants'

4  motion to dismiss.  (Docket No. 44.)  Defendant Ellis's motion is GRANTED, and the joinder is

5  accepted.  Plaintiff has filed an opposition to Defendant Ellis's motion to dismiss.

6      For the reasons discussed below, Defendants' motion to dismiss is GRANTED IN PART

7  AND DENIED IN PART.  The Court also addresses Plaintiff's pending motions below.  The parties

8  are directed to abide by the briefing schedule outlined below.

9                                    **BACKGROUND**

10  **I.      602 Appeal Log No. CTF HC 12037007**

11      On March 15, 2012, Plaintiff filed a 602 inmate appeal ("602 appeal") requesting to "see a

12  specialist to get [an] MRI[1]."  (Declaration of Attorney Trace O. Maiorino, Docket No. 24 ("Maiorino

13  Decl."), Ex. H. at 11.)  In that 602 appeal -- which was given log no. CTF HC 12037007 -- Plaintiff

14  explained that he "had x-rays in 2009 that showed DDD and old comp. fracture."[2]  (*Id.*)  Plaintiff

15  also stated that in 2003, he was "slammed on [his] back and head by officers while [he] was

16  handcuffed behind his back" during which he "sustained more injury to [his] back along with brain

17  damage that led to [him] losing his peri[ph]eral vision."  (*Id.* at 9, 11.)  Plaintiff claimed he was

18  taking 10 mg. of methadone[3] twice a day, but it "doesn't help very much."  (*Id.* at 9.)  He added that

19  he was also taking Nortriptylline, but it "led [him] to having anxiety attacks."  (*Id.*)  He claimed that

20  on a pain scale from one to ten, where one shows the least pain, his back pain is "8 most of the

21

22

23  _____

24      [1] "MRI" is the acronym for magnetic resonance imaging.

25      [2] "DDD" is the acronym for degenerative disc disease, and the most common DDD
     symptoms include pain in the neck or the back.  Meanwhile a spinal compression fracture, more
26  commonly simply called a "compression or comp. fracture," is an injury to the vertebrae caused by
     trauma, or complications from conditions such as cancer and osteoporosis which may weaken the
27  bones of the spine.

28      [3] Methadone is a narcotic pain medication and a Schedule II controlled substance, which is
     considered to have strong potential for abuse or addiction, but also has certain medical uses.  21
     U.S.C. § 812(b)(2).

United States District Court
For the Northern District of California

1  time." (*Id.*)  Therefore, Plaintiff requested the following: (1) a specialist referral; (2) a diagnostic

2  MRI; (3) a lower bunk chrono[4]; and (4) a medication renewal/adjustment.

3          On April 6, 2012, Defendant Fernandez interviewed Plaintiff about his 602 appeal, and then,

4  on April 10, 2012, responded to it at the first level of review.  According the written first level

5  review response, Defendant Fernandez "partially granted" Plaintiff's 602 appeal.  Specifically,

6  Defendant Fernandez "partially granted" Plaintiff's request for an MRI by stating that his primary

7  care provider ("PCP") had "determined that [an] x-ray [was] needed to determine the discomfort in

8  the thoracic area . . . ."  (*Id.* at 7.)  Defendant Fernandez also "partially granted" the medication

9  renewal/adjustment by "discontinuing medication Nortriptylline due to increasing anxiety [and]

10  [m]ethadone was continued."  (*Id.*)  Plaintiff's remaining requests were denied because there were

11  "no orders for a specialist or referral" and he "did not meet the criteria for [a] lower bunk chrono."

12  (*Id.*)

13          On April 14, 2012, Plaintiff appealed the first level review response to his 602 appeal,

14  specifically complaining about the denial of his requests for an MRI and for a referral to a specialist.

15  (*Id.* at 10.)

16          On May 17, 2012, Defendants Delgado and Ellis "partially granted" his appeal at the second

17  level of review.  Specifically, the second level review response states that Defendant Delgado

18  reviewed Plaintiff's appeal and his Unit Health Record ("UHR") to reveal the following:

19          No medical indication to see a specialist.  Denied.
        No medical indication for an MRI.  Denied.
20          No medical indication for a lower bunk.  Denied.
        Request for medical renewal.  Partially granted.  Methadone was renewed and
21          increased on 5/3/12.  Granted.

22  (*Id.* at 6.)

23          On May 23, 2012, Plaintiff appealed the second level review response to his 602 appeal,

24  again stressing that he requested an MRI and complaining that his "back (spine) hurts and is causing

25  numbness to [his] left leg and foot."  (*Id.* at 10.)

26

27

28

---

[4] A "chrono" is a form that allows prisoners to request certain medical accommodations as deemed necessary by medical staff.

3

United States District Court
For the Northern District of California

On September 4, 2012, L. D. Zamora, Chief of the Inmate Correspondence and Appeals Branch, responded to Plaintiff's appeal at the third and final level of review,[5] stating:

> . . . your appeal file and documents obtained from your [UHR] were reviewed by licensed clinical staff and revealed the following:
>
> •     On June 28, 2012 and July 27, 2012, you received primary care provider (PCP) evaluations regarding your back. Your provider reviewed the lumbar spine x-rays dated April 12, 2012, and compared them to the 2009 films with the notation of "no changes since 2009."
> •     On July 27, 2012, you signed a pain management contract regarding methadone.
> •     There is no indication your PCP considers a specialist referral or MRI is medically necessary at this time.
> •     Your primary profile reveals active orders for methadone.

(*Id.* at 4.) Chief Zamora denied Plaintiff's appeal at the third level of review upon concluding as follows: ". . . there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated and you are receiving treatment deemed medically necessary." (*Id.*)

## II.     602 Appeal Log No. CTF HC 12037457

On June 14, 2012, Plaintiff filed another 602 appeal -- which was given log no. CTF HC 12037457 -- complaining about CTF medical staff's "failure to treat [his] back pain or let Dr. accommodate." (Compl., Ex. B at 1.) Specifically, Plaintiff claimed that his doctors at CTF have been granting him California Department of Corrections and Rehabilitation ("CDCR") 7410 comprehensive accommodation chronos "to allow [him] some ease of discomfort that [he] ha[s] due to severe back pain." (*Id.*) However, Plaintiff complained that "[e]verytime [his] Dr. fills out the [CDCR] 7410, it[']s denied by the CMO. (*Id.* at 2.) Plaintiff added that "the CMO continues to deny any treatment (MRI, specialist, cane, medical mattress, lower bunk) for no reason." (*Id.*) Plaintiff specifically named Defendants Delgado and Bright as those responsible for denying him medical care, stating: "The CMO R. Delgado and D. Bright are allowing me to suffer and stay in pain deliberately." (*Id.*)

---

[5] The Court notes that Defendants' attorney incorrectly stated in the motion to dismiss that Plaintiff did not appeal log no. CTF HC 12037007 to the third level of review. (Mot. to Dismiss at 2.) The record shows otherwise. (Declaration of Chief L. D. Zamora, Docket No. 27, Ex. A.) Defendants' attorney shall show cause why he should not be sanctioned for misrepresenting the record to the Court, as directed below.

4

**United States District Court**
For the Northern District of California

On June 21, 2012, Defendant Javate interviewed Plaintiff, and on June 25, 2012, "granted" Plaintiff's appeal at the first level of review, stating as follows:

> . . . when [Defendant Javate] called you to the waiting area, you stood up from the bench without difficulty. You ambulated without a limp or assistive device. You claimed you have chronic lower back pain with occasional numbness of left leg. You stated you have had several x-rays with a recent one on 4/12/12. Your [PCP] Dr. Kalisher discussed criteria for lover bunk such as "severe." Thoracic spine x-ray result dated 4/12/12 was read to you . . . . Based on mild to moderate x-ray findings, you do not meet the criteria for lower bunk. Methadone was recently increased from 10 mg in morning, 5 mg in afternoon and 10 mg at bedtime.
>
> You verbally expressed withdrawal for an extra mattress and you stated you were not necessarily concerned about the double mattress. You claimed you had fallen (6) times in the past month due to left leg numbness and mid-lower back pain. You denied seeking any medical help during these incidents, stated "it is all during first watch." It is noted that you do not have significant disability; therefore you do not meet the criteria for [a] cane. You left the clinic walking in a fast pace.

(*Id.*) Defendant Javate concluded, "Your request that your doctor have the authority to prescribe or give you what it necessary to treat you in granted." (*Id.* at 3.) In addition, Defendant Javate stated, "[Plaintiff's] request that the CMO's allow the doctors to treat their patients without interference is granted." (*Id.* at 4.)

Plaintiff did not appeal the first level review response to the higher levels of review. And, as explained above, Plaintiff claims in the instant action that Defendants did not adhere to this "fully granted" 602 appeal "in an attempt to thwart Plaintiff from receiving the treatment needed to ease or eliviate [sic] [his] pain al[]together." (*Id.* at 9.)

**III.     Defendants' Allegedly Unconstitutional Actions**

**A.     Defendant Fernandez**

Plaintiff claims that Defendant Fernandez, who is a registered nurse, "is not capable in her li[]cense and job description to grant any appeal that has to do with any subject only a Dr. or higher can permit under their li[]cence." (Compl. at 4.) However, Defendant Fernandez "still heard Plaintiff's appeal, knowing that she would have to deny it and that Plaintiff would have to continue to stay in pain." (*Id.*)

**B.     Defendant Delgado**

Plaintiff claims that Defendant Delgado, as "chief physician and surgeon" has the "authority to grant an appeal that would allow an MRI, specialty consult or auxil[ia]ry accom[m]odations."

United States District Court
For the Northern District of California

1  (*Id.*)  Plaintiff claims that Defendant Delgado was aware that Plaintiff was suffering from "severe

2  back pain."  (*Id.*)  Further, Defendant Delgado was aware that "x-rays only show[ed] bone

3  deficiencies and that there are other treatment options, [and he] should have sought one of those

4  options."  (*Id.*)  Instead, Plaintiff claims that Defendant Delgado "chose to deny [his] appeal and

5  continue to allow [him] to suffer further pain and injury."  (*Id.*)

6  ### C.   Defendants Adams, Bright, Javate and Ellis

7  Plaintiff claims that Defendant Adams, Bright, Javate and Ellis failed to adhere to the "fully

8  granted" 602 appeal, log no. CTF HC 12037457.   Specifically, Plaintiff claims that Defendant

9  Javate, who granted the 602 appeal at issue -- log no. CTF HC 12037457 -- is liable for failing to

10  "mak[e] sure that the (602) is distributed to the right medical person[n]el so it can and will be

11  adhered to."  (*Id.* at 7.)  Plaintiff claims that Defendant Ellis, as "CEO of the medical department at

12  CTF" is liable for "allowing his medical staff to violate Plaintiff[']s rights."  (*Id.*)  Finally, the record

13  shows that Plaintiff filed two 602 appeals complaining that CTF medical staff did not adhere to the

14  granted appeal in log no. CTF HC 12037457, and that these two 602 appeals were handled by

15  Defendants Adams, Bright and Ellis.

16  ### 1.   602 Appeal Log No. CTF HC 12037888

17  The record shows that Plaintiff filed a 602 appeal on September 3, 2012 -- which was given

18  log no. CTF HC 12037888 -- against the "CMOs" who did not approve his CDCR 7410 dated July

19  27, 2012.  In this appeal, Plaintiff specifically stated as follows:

20  > On 7-27-12, I saw my PCP and she filled out a 7410 accom[m]odation chrono so I
21  > could receive the necessary stuff to ease my back pain and to help me not fall and
   > stand in lines due to my nerve damage causing my left leg and foot to go numb.  On
22  > 6-25-12, I had appeal log # CTF HC 10237457 fully granted saying the CMOs will
   > not interfere with the treatment my PCP feels [is] necessary to treat me.  She filled
23  > out the accom[m]odation chrono because she fills [sic] that that course of treatment
   > would be best and least ab[]rasive and also might allow me to lower my dosage of
24  > methadone.  Yet you have 10 days to approve the accom[m]odation for and return it
   > to me so I can rec[ei]ve the items (appliances) requested in a timely manner.  It has
25  > not been over a month and I still have not rec[ei]ved the accom[m]odation chrono.
   > This is a violation of my due process and a violation of adherence to the granted
   > appeal (CTF HC 12037457).

26  (Maiorino Decl., Ex. C at 7-8.)  Plaintiff requested the following:  (1) that his CDCR 7410 be

27  approved; (2) that the CMOs "responsible for the failure to approve and return" his CDCR 7410 be

28  "investigated by the medical licensing board for deliberate indifference and malpractice"; (3) that

1  there be an "inquiry done on the procedures concerning time lines in returning [CDCR] 7410

2  forms"; and (4) that "[a]ll medical person[n]el adhere to the granting of CTF HC 12037457." (*Id.* at

3  8.) The 602 appeal was bypassed at the first level of review.

4        At the second level of review, the record shows that it was initially assigned to Defendant

5  Bright on September 7, 2012, who "accepted [the assignment] at the Second Level of Review." (*Id.*

6  at 7.) Thereafter, the record shows the assignment was passed on to Defendant Adams, who

7  interviewed Plaintiff on November 2, 2012. According to the second level review response,

8  Defendant Adams discovered that the accommodations Plaintiff was requesting in his CDCR 7410

9  were a bottom bunk and extra mattress. (*Id.* at 10.) Defendant Adams denied the CDCR 7410,

10  stating that Plaintiff "d[id] not meet the CDCR criteria for either accommodation per (Inmate

11  Medical Services Policies & Procedures, Volume 4, Chapter 23) and therefore they are not

12  medically indicated." (*Id.* at 10.) Defendant Adams also denied Plaintiff's request to have these

13  denied accommodations be investigated by the Medical Licensing Board because such an

14  investigation is "beyond the scope of the 602 process." (*Id.*) Defendant Adams also denied

15  Plaintiff's request to have an inquiry done on the procedures of the time frames for returning the

16  CDCR 7410. Finally, Defendant Adams granted Plaintiff's request to adhere to the granting of log

17  no. CTF HC 12037457, stating:

18        Your doctors have the authority to treat you as a patient in accordance [with] their
          medical decision making as long as their treatment in within the standard of care
19        and is in compliance with CDCR policy, State and Federal laws. You are currently
          receiving appropriate treatment for your "back and nerve damage." You are
20        currently on the pain medication Methadone for your discomfort . . . .

21  (*Id.* at 11.) Therefore, Defendant Adams partially granted the 602 appeal at the second level of

22  review. The record shows that Defendant Adams signed the partial grant as the "Interviewer," and

23  Defendant Ellis signed it as the "Reviewer." (*Id.* at 7.)

24        On November 28, 2012, Plaintiff appealed the second level decision -- specifically the denial

25  of the bottom bunk and extra mattress accommodations -- to the third level of review, stating: "Per

26  the granting of appeal log # CTF HC 12037457, CM[O] Bright and Adams should have adhered to

27  the request." (*Id.* at 9.) On June 19, 2013, Chief Zamora denied Plaintiff's appeal at the third level

28  of review upon considering Plaintiff's record (appeal file and UHR), which indicated as follows:

7

- • Documentation is supportive of you receiving PCP evaluation and treatment as determined medically indicated for chronic back pain including physical therapy services, diagnostic testing, trigger point injection, an active order for the medication methadone, and accommodations.
- • On October 9, 2012, the Accommodations Chrono Committee denied a CDCR 7410 for bottom bunk, cane, extra mattress, lower locker, and physical limitations to job assignments.
- • On November 6, 2012, a temporary CDCR 7410 was approved for bottom bunk, ground floor cell, cane, extra mattress, lower locker, and physical limitations to job assignments for 30 days.
- • On March 29, 2013, a temporary CDCR 7410 was approved for a ground floor cell, bottom bunk, walker, and physical limitations to job assignments through April 12, 2013.
- • On April 17, 2013, you received CDCR 1845, Disability Placement Program Verification (DPPV) evaluation indicating verification of claimed mobility impairment not confirmed as objective clinical data/findings and observed function do not correlate or confirm permanent impairment/disability; a CDCR 7410 was approved for prescription glasses, an extra mattress, and physical limitations to job assignments; cane and walker accommodations were discontinued.
- • On May 24, 2013, a CDCR 7410 was approved to add arch supports.

(*Id.* at 3-4.) Chief Zamora then acknowledged that log no. CTF HC 12037457 "was granted at the First Level of Appeal in that the PCP has the authority to prescribe treatment deemed medically necessary *in accordance with appropriate policies and procedures*." (*Id.* at 4 (emphasis added).) Chief Zamora stressed that "all CDCR 7410 accommodations require approval," and he outlined the procedure to be followed before any CDCR 7410 can be approved. (*Id.*) Chief Zamora denied Plaintiff's appeal at the third level of review upon concluding as follows: "After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary." (*Id.*)

**2.    602 Appeal Log No. CTF HC 12038162**

The record also shows that Plaintiff filed a 602 appeal -- which was given log no. CTF HC 12038162 -- against Defendant Bright on October 24, 2012.[6] (Maiorino Decl., Ex. E at 5.) Plaintiff stated that on October 24, 2012, Defendant Bright met with Plaintiff about "an appeal that CMOs were not adhering to the granting of appeal log no. CTF HC 12037457." (*Id.*) Plaintiff complained

---

[6] In the reply, Defendants' attorney has once again misrepresented the record to the Court by stating that log no. CTF HC 12038162 "relates to actions by Dr. Bright *after* the filing of this lawsuit." (Reply at 3.) However, the record shows that the instant action was filed on November 27, 2012, and log no. CTF HC 12038162 was filed on October 24, 2012 -- more than a month *before* this lawsuit was filed. This is the second mistake by Defendants' attorney that the Court has highlighted in this Order. As stated above, Defendants' attorney has been directed to show cause why he should not be sanctioned for misrepresenting the record to the Court.

United States District Court
For the Northern District of California

1   that he did not want to be examined by Defendant Bright, that the medical staff needed to be trained

2   on adhering to his 602 appeal that had been granted (log no. CTF HC 12037457), and that no

3   reprisals or retaliation be taken against [him] for filing this appeal." (*Id.* at 5, 7.)  In both responses

4   at the first and second levels of appeal, Plaintiff's grievance against Defendant Bright were "partially

5   granted" by Defendants Adams and Ellis, respectfully.  While Defendants Adams and Ellis denied

6   Plaintiff's request never to be seen by Defendant Bright, they granted Plaintiff's two other requests to

7   have the medical staff trained on the 602 process and to make sure that no reprisals or retaliation

8   would be taken against him for filing the appeal.  (*Id.* at 10-11.)  At the third level of review,

9   Plaintiff's appeal was denied by Chief Zamora on June 19, 2013, upon finding that "[a]fter review,

10  no intervention at the Director's Level of Review is necessary." (*Id.* at 4.)

**DISCUSSION**

## I.   Motion to Dismiss for Failure to Exhaust Administrated Remedies

13          The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide,

14  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

15  Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

16  administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although once

17  within the discretion of the district court, exhaustion in prisoner cases covered by section 1997e(a) is

18  now mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  All available remedies must now be

19  exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and

20  effective.'"  *Id.* (citation omitted).  Even when the prisoner seeks relief not available in grievance

21  proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*,

22  532 U.S. 731, 741 (2001).  Similarly, exhaustion is a prerequisite to all prisoner suits about prison

23  life, whether they involve general circumstances or particular episodes, and whether they allege

24  excessive force or some other wrong.  *Porter*, 534 U.S. at 532.

25          The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

26  procedurally defective administrative grievance or appeal."  *Woodford v. Ngo*, 548 U.S. 81, 83

27  (2006).  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted'

28  to mean what the term means in administrative law, where exhaustion means proper exhaustion."

9

United States District Court
For the Northern District of California

1   *Id.* at 92.  Therefore, the PLRA exhaustion requirement calls for proper exhaustion.  *Id.*  "Proper

2   exhaustion demands compliance with an agency's deadlines and other critical procedural rules

3   because no adjudicative system can function effectively without imposing some orderly structure on

4   the course of its proceedings." *Id.* at 91 (footnote omitted); *Jones v. Bock*, 549 U.S. 199, 218 (2007)

5   (compliance with prison grievance procedures is required by the PLRA to exhaust properly).  It is

6   the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  *Id.*

7        The State of California provides its prisoners the right to appeal administratively "any

8   departmental decision, action, condition or policy perceived by those individuals as adversely

9   affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them the right to file

10   appeals alleging misconduct by correctional officers and officials.  *Id.* § 3084.1(e).  In order to

11   exhaust available administrative remedies within this system, a prisoner must proceed through

12   several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal

13   form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the

14   Director of the CDCR.  *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code

15   Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion

16   requirement under section 1997e(a).  *Id.* at 1237-38.

17        Non-exhaustion under section 1997e(a) is an affirmative defense which should be brought by

18   defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).

19   *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

20        Defendants did so here.  Defendants state that Plaintiff alleges that they were "deliberately

21   indifferent to his medical condition not because they provided inadequate medical treatment, but

22   because they improperly responded to his inmate grievances."  (Mot. to Dismiss at 5.)  Defendants

23   argue that Plaintiff did not properly exhaust his claim because he failed to "submit inmate

24   grievances complaining about the manner in which Defendants responded to his inmate grievances

25   before filing this lawsuit . . . ."  (*Id.*)  Defendants further argue that Plaintiff's claim in the instant

26   action was not exhausted to the third level of review.  (*Id.* at 7-8; Reply 3-4.)

27        As an initial issue, the Court finds that Defendants have mis-stated Plaintiff's claim.  While it

28   is true that Plaintiff takes issue with his 602 appeals being denied and his "fully granted" 602 appeal

in log no. CTF HC 12037457 not being adhered to, the Court finds that, in essence, Plaintiff claimed that he was receiving inadequate treatment from Defendants. As stated above, Plaintiff complained of severe back pain. In the two 602 appeals at issue -- log no. CTF HC 12037007 and CTF HC 12037457 -- Plaintiff clearly conveyed to CTF medical staff that he was in need of treatment for his severe back pain. The Court now reviews Plaintiff's claim against Defendants, specifically pertaining to the handling of these two 602 appeals.

### A. Defendants Fernandez, Ellis and Delgado's Handling of Log No. CTF HC 12037007

First, in log no. CTF HC 12037007, Plaintiff alerted CTF prison staff that his severe back pain continued to persist, but that his accommodations of "light duty chrono and lower bunk" were denied. He requested the following type of treatments to alleviate his back pain: (1) a specialist referral; (2) a diagnostic MRI; (3) a lower bunk chrono; and (4) a medication renewal/adjustment. As explained in detail above, Defendants Fernandez, Delgado and Ellis handled his 602 appeals. Because these Defendants were notified of Plaintiff's severe back pain and treatment requests during the first and second levels of review, they were provided an opportunity to address his request. In fact, the record shows that these Defendants partially granted Plaintiff's appeals at the first and second levels. However, while they granted Plaintiff's medication adjustment, they denied his other requested treatments.

Defendants argue that, Plaintiff failed to exhaust simply because he did not submit *another* 602 appeal "complaining about the manner in which Defendants responded to his inmate grievances. . . ." (Mot. to Dismiss at 2.) To support their argument, Defendants rely on *Griffin v. Arpaio*, which holds that "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" 557 F.3d 1117 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Defendants argue that because Plaintiff did not file that *second* 602 complaining about improper grievance handling -- he did not sufficiently alert Defendants to the nature of the wrong for which he seeks redress.

The Court finds this argument unavailing. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* at 1120. The Ninth Circuit found that Griffin had not properly exhausted because "[t]he officials responding

11

United States District Court
For the Northern District of California

1    to his grievance reasonably concluded that the nurse's order for a lower bunk assignment solved

2    Griffin's problem." *Id.* at 1121.  Griffin continued to appeal because the nurse's lower bunk order

3    was being disregarded.  *Id.*  However, instead of explaining that the nurse's order had been

4    disregarded as the reason for his appeal, Griffin repeatedly demanded a ladder.  *Id.*  As such, the

5    Ninth Circuit found that he did not provide adequate information to prison officials to address his

6    issue.  *Id.*

7            Unlike Griffin, Plaintiff in the present case was not granted all his treatment requests.  There

8    was no order that had been disregarded.  In his 602 appeal -- log no. CTF HC 12037007 -- Plaintiff

9    provided adequate information to Defendants to address his treatment requests.  The record shows

10   that, throughout the prison's grievance process, he alerted Defendants that: (1) his severe back pains

11   were not being treated because the pain was persistent; and (2) the relief he sought were alternative

12   treatments like a diagnostic MRI, a referral to a specialist, and a lower bunk chrono.  Defendants

13   Fernandez, Delgado and Ellis reviewed Plaintiff's 602 appeal, and thus were aware of his severe

14   back pain as well as his suggested treatment requests to alleviate his pain.  However, these

15   Defendants chose only grant his medicine adjustment and deny his treatment requests.  Plaintiff,

16   who found inadequate the granted medicine adjustment, appealed to the Director's level of review

17   the issue relating to his other denied treatment requests, and it was denied.  Thus, Plaintiff pursued --

18   to the final level of review -- his claim of inadequate treatment against these Defendants, who

19   reviewed his appeals and did not remedy the constitutional violation.  The Court finds that Plaintiff

20   exhausted his Eighth Amendment claim against Defendants Fernandez, Delgado and Ellis for being

21   deliberately indifferent to Plaintiff's severe back pain by denying his treatment requests when

22   handling appeal log no. CTF HC 12037007.  Therefore, Defendants have failed to meet their burden

23   of proving that Plaintiff did not exhaust all available administrative remedies as to his claim against

24   these Defendants.  Accordingly, Defendants' motion to dismiss is DENIED as to Defendants

25   Fernandez, Ellis and Delgado's handing of log no. CTF HC 12037007.

26        **B.      Defendants Ellis, Bright, Adams and Javate's Adhering to Grant in Log No.
                 CTF HC 12037457**

27

28        Second, in log no. CTF HC 12037457, Plaintiff alerted CTF prison staff that his severe back

     pain continued to persist and that his doctors were filling out CDCR 7410 forms for

**United States District Court**
For the Northern District of California

accommodations to "ease his pain," but these accommodations were being denied by the CMOs.  As mentioned above, this 602 appeal was "fully granted" by Defendant Javate at the first level of review.  Specifically, Defendant Javate granted Plaintiff's request that his doctors be given the authority to prescribe or give him what is necessary to treat him.  Plaintiff did not appeal this decision to any of the higher levels of review.  In the instant case, Plaintiff claims that Defendants Ellis, Bright, Adams and Javate failed to adhere to this grant in log no. CTF HC 12037457.  In other words, Plaintiff claims that they failed to adhere to the "fully granted" appeal, in which he requested "all CMOs [to] stop interfering with [his] Primary Care Providers['] diagnoses and treatment." (Compl. at 3.)

### 1.    Defendant Javate

As mentioned above, Defendant Javate was the one who granted the 602 appeal at issue -- log no. CTF HC 12037457.  Plaintiff claims this Defendant is liable for failing to ensure that decision to fully grant this 602 appeal was distributed to the "right medical person[n]el so it can and will be adhered to." (Compl. at 7.)[7]  However, Defendants argue that Plaintiff failed to address this allegation in a 602 appeal or to pursue this issue to the third level of review.  The record supports Defendants' argument.  Plaintiff did not appeal Defendant Javate's decision to grant the 602 appeal in log no. CTF HC 12037457.   Further, none of Plaintiff's 602 appeals (filed after Defendant Javate granted log no. CTF HC 12037457) involved Plaintiff's claim that Defendant Javate handled this grant inappropriately in any manner.  Accordingly, Defendants have met their burden of proving that Plaintiff did not exhaust all available administrative remedies as to his claim against Defendant Javate.  Therefore, Defendants' motion to dismiss is GRANTED as to Plaintiff's claim relating to

---

[7] Defendants also refer to Plaintiff's claim against Defendant Javate for denying his 602 appeal -- log no. CTF HC 12037319 -- at the first level of review, and thus denying Plaintiff a "auxiliary appliances (canes, double mattress, and lower bunk)." (Mot. to Dismiss at 8.)  Such a claim is not plainly obvious from the face of the complaint.  Plaintiff simply states in his complaint that Defendant Javate did not grant these auxiliary appliances, but does not state that it was as a result of a separate 602 appeal. (Compl. at 4.)  Therefore, the Court will assume that this statement is related to Defendant Javate's failure to distribute the granted 602 appeal so as to ensure that these appliances would be granted.  Thus, the Court will only focus on Plaintiff's claim relating to Defendant Javate's handling of log no. CTF HC 12037457.  In any event, even if Defendants' reading of this claim were to be correct, the Court notes that log no. CTF HC 12037319 was not exhausted to the third level of review because it was screened out at that level for "missing signature/date on Section F." (Decl. Zamora, Ex. A at 3; Compl., Ex. C.)  Therefore, such a claim is unexhausted for failure to appeal to the third level of review.  In any event, Defendants' motion will be granted as to Plaintiff's claim against Defendant Javate, as further explained in this Order.

13

United States District Court
For the Northern District of California

1    Defendants Javate's handing of log no. CTF HC 12037457.  This claim is DISMISSED without

2    prejudice because Plaintiff did not exhaust his administrative remedies as to this claim.

3                        **2.    Defendant Bright, Adams and Ellis**

4        Plaintiff claims that Defendants Bright, Adams and Ellis failed to adhere to the "fully

5    granted" 602 appeal -- log no. CTF HC 12037457.[8]  (Compl. at 5-8.)  Defendants claim that Plaintiff

6    failed to exhaust his claims against these Defendants because they argue that none of the "seven[9]

7    inmate grievances" reviewed at the third level of appeal address Plaintiff's allegations against

8    Defendants Bright, Adams and Ellis.  (Mot. to Dismiss at 9-10; Ellis's Mot. to Dismiss at 6-7.)  To

9    the contrary, as outlined above, the Court has found that Plaintiff filed two 602 appeals -- log no.

10   CTF HC 12037888 and log no. CTF HC 12038162 -- complaining that Defendants did not adhere to

11   the granted 602 appeal in log no. CTF HC 12037457.  Plaintiff exhausted both these 602 appeals to

12   the third level of review; however, both decisions at the final level were issued on June 19, 2013 --

13   which was *after* the instant complaint was filed on November 27, 2012.  An action must be

14   dismissed unless the prisoner exhausted his available administrative remedies before he filed suit,

---

16       [8] In their motion to dismiss and reply, Defendants acknowledge that Plaintiff's complaint is
     "based on two inmate grievances: (1) CTF [HC] 12037007, submitted on March 15, 2012; and (2)
17   CTF HC 12037457 submitted on June 14, 2012."  (Mot. to Dismiss at 8, note 1.)  However, in the
     body of their motion, Defendants' do specify in their analysis that Plaintiff's claim against
18   Defendants Bright, Adams and Ellis involves their failure to adhere to the fully granted 602 appeal
     in log no. CTF HC 1203745.  At times, Defendants use general language in their argument, i.e.,
19   "[Plaintiff] alleges that [Defendant] Bright 'breached the contract (602) granted' on June 26, 2012."
     (*Id.* at 9.)  Defendants do not elaborate that this 602 appeal was log no. CTF HC 1203745, which
20   was granted on June 26, 2012.  Meanwhile, at another occasion, Defendants misconstrue Plaintiff's
     claim against Defendant Adams.  Defendants point out that Plaintiff claims that Defendant Adams
21   "was deliberately indifferent to his medical condition because she allegedly denied his request for
     certain accommodations and 'did not adhere to the granting of (the 602).'"  (*Id.*)  Clearly, Plaintiff
22   refers to his claim that Defendant Adams did not adhere to the grant in CTF HC 1203745; however,
     Defendants incorrectly presume that Plaintiff is "referring to the first level of review, where log no.
23   CTF HC 1237319 was partially granted by Dr. Javate."  (*Id.* at 9, note 2.)  For this reason, the Court
     will ignore Defendants' confusing analysis and determine whether Plaintiff's claims against
24   Defendants Bright, Ellis and Adams based on its review of the record.

25       [9] The record shows that there were more than seven 602 appeals that Plaintiff submitted to
     the third level of review.  The Court reviewed Defendants' own exhibit and counted a total of ten
26   602 appeals at CTF that were submitted to the third level of review.  (Zamora Decl., Ex. A at 2-7.)
     However, among the three 602 appeals that were not considered by Defendants were two that the
27   Court agrees are not relevant their argument: (1) log no. CTF SC 12000236 dealt with an issue
     which was "not a staff complaint;" and (2) log no. CTF HC 12037319, as mentioned above, was
28   screened out at the third level of review.  (*Id.* at 2-3.)  However, because Defendants have
     considered Plaintiff's argument to be that they improperly handled log no. CTF HC **12037007** (as
     opposed to the "fully granted" log no. CTF HC **12037457**), they also did not count that 602 appeal at
     issue -- log no. CTF HC **12037007** -- in their count of seven.

United States District Court
For the Northern District of California

1    even if the prisoner fully exhausts while the suit is pending.  *McKinney v. Carey*, 311 F.3d 1198,

2    1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006).  Therefore,

3    these 602 appeals that both concluded *after* the instant complaint was filed did not exhaust any claim

4    in this action.  Accordingly, Defendants have met their burden of proving that Plaintiff did not

5    exhaust all available administrative remedies as to his claim relating to Defendants Bright, Adams

6    and Ellis's failure to adhere to the granted appeal in log no. CTF HC 12037457.  Therefore,

7    Defendants' motion to dismiss is GRANTED as to this claim, and it is DISMISSED without

8    prejudice because Plaintiff did not exhaust his administrative remedies as to this claim before filing

9    this action.

10          **C.      Conclusion**

11          In sum, Defendants' motion to dismiss for failure to exhaust administrative remedies is

12   GRANTED IN PART AND DENIED IN PART, as follows:

13          (a)      The Court finds Defendants have failed to show administrative remedies remained

14   available to Plaintiff to properly exhaust his claim relating to Defendants Fernandez, Ellis and

15   Delgado's handing of log no. CTF HC 12037007; therefore, Defendants' motion to dismiss is

16   DENIED as to this claim;

17          (b)      Defendants' motion to dismiss is GRANTED as to Plaintiff's claim relating

18   Defendants Javate's handing of log no. CTF HC 12037457; and

19          (c)      Defendants' motion to dismiss is GRANTED as to Plaintiff's claim relating to

20   Defendants Bright, Adams and Ellis's failure to adhere to the granted 602 appeal in log no. CTF HC

21   12037457.

22   **II.    Qualified Immunity**

23          Defendants assert they are entitled to qualified immunity on Plaintiff's claim relating to

24   Defendants Fernandez, Ellis and Delgado's handing of log no. CTF HC 12037007.[10]

25          Defendants bring their motion for qualified immunity as a motion to dismiss, pursuant to

26   Rule 12(b)(6).  Defendants, in support of their motion, rely solely on documents -- i.e., relevant 602

27

28          [10] The Court need not address the qualified immunity argument as to Plaintiff's Eighth
     Amendment claims against the other Defendants because it has granted Defendants' motion to
     dismiss failure to exhaust administrative remedies as to those claims.

United States District Court
For the Northern District of California

appeals -- attached to Plaintiff's complaint.  While they have submitted copies of these same 602 appeals as exhibits attached to the declaration of Attorney Maiorino, Defendants have submitted no other declarations or evidence outside the pleadings relevant to a qualified immunity determination.

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law;" the defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation and citation omitted).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier* and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  Qualified immunity is particularly amenable to summary judgment adjudication.  *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

Here, Plaintiff has adequately alleged an Eighth Amendment deliberate indifference claim as to his serious medical needs.  During the time period of the alleged acts, an inmate's right to be free from deliberate indifference to his serious medical needs  was clearly established by existing case law.  The question, however, of whether any of the remaining Defendants could reasonably have believed that his conduct was lawful is more properly resolved on a motion for summary judgment, when Defendants are entitled to present evidence on their behalf and the Court may properly consider such evidence.  *See, e.g., Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (affirming

16

United States District Court
For the Northern District of California

the district court's denial of a dismissal motion on grounds of qualified immunity because the court's review is confined only to the contents of the complaint). Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether any of the remaining Defendants is entitled to qualified immunity. Therefore, the Court DENIES WITHOUT PREJUDICE Defendants' alternative argument that they are entitled to qualified immunity as to Plaintiff's claim relating to Defendants Fernandez, Ellis and Delgado's handing of log no. CTF HC 12037007.

**III.    Plaintiff's Pending Motions**

**A.    "Motion for a Stay of Defendants Tampering With Plaintiff's Pain Medication"**

In his motion entitled, "Motion for a Stay of Defendants Tampering With Plaintiff's Pain Medication," Plaintiff "asks the Court to grant the temporary stay until the outcome of this action or until the defendants give plaintiff an MRI and see if there is another way of eleviating [sic] Plaintiff's pain." (Docket No. 12 at 4.)

Plaintiff has since informed the Court that he underwent an MRI on March 15, 2013. (Docket No. 37-1 at 1.) Accordingly, Plaintiff's aforementioned motion is DENIED as moot. (Docket No. 12.)

**B.    Motion Ordering Defendants to Reply to Complaint and Motion for Default Judgment**

Plaintiff filed a motion entitled, "Motion Ordering Defendants to Reply to Complaint." Prior to Plaintiff filing the aforementioned motion, the Court had already issued its Order of Service. (Docket No. 5.) Because Defendants have since responded to the complaint by filing an answer and a dispositive motion, Plaintiff's "Motion Ordering Defendants to Reply to Complaint" is DENIED as moot. (Docket No. 13.)

Plaintiff also filed a motion for default judgment as to his claims against Defendant Ellis, who had not yet appeared in this action at the time this motion was filed. Defendant Ellis has since filed an answer (Docket No. 18) and, as mentioned above, the requisite motion to join the other Defendants' motion to dismiss. (Docket No. 44.) Consequently, default judgment will not be entered as to Defendant Ellis, and Plaintiff's motion is DENIED. (Docket No. 21.)

**C.    Discovery Motions**

**1.    Motion to Compel Discovery**

17

**United States District Court**
For the Northern District of California

1    Plaintiff filed a motion to compel discovery.  (Docket No. 30.)

2    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further

3    court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the

4    parties may conduct discovery.  For Plaintiff's information, the proper manner of promulgating

5    discovery is to send demands for documents or interrogatories (questions asking for specific, factual

6    responses) directly to Defendants' counsel.  *See* Fed. R. Civ. P. 33-34.  The scope of discovery is

7    limited to matters "relevant to the claim or defense of any party . . . .  Relevant information need not

8    be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of

9    admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Discovery may be further limited by court order if

10   "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other

11   source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery

12   has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the

13   burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2).

14   It is not an effective or appropriate use of the Court's limited resources for it to oversee all

15   aspects of discovery.  Thus, before filing a motion to compel, the moving party must first attempt to

16   resolve the dispute informally with the opposing party.  It is only when the parties are unable to

17   resolve the dispute after making a good faith effort to do so should they seek the Court's

18   intervention.  *See* Fed. R. Civ. P. 37(a)(2)(B); N.D. Cal. Local Rule 37-1.  Because Plaintiff is

19   incarcerated, he is not required to meet and confer with Defendants *in person*.  Rather, if Plaintiff's

20   discovery requests are denied and he intends to pursue a motion to compel, he need only send a

21   letter to Defendants to that effect, offering them one last opportunity to provide him the sought-after

22   information.  The letter should state the specific discovery he seeks, and state the reasons that

23   Plaintiff believes he is entitled to such discovery.

24   Here, Plaintiff did not meet and confer with Defendants, which would have afforded them

25   with a final opportunity to address each request upon which he now asks the Court to rule.  In

26   addition, since Plaintiff filed his motion to compel, the Court has granted Defendants' motion to stay

27   discovery.  (Docket No. 32.)  As explained below, the Court will lift the stay of discovery now that

28   the pending motion to dismiss has been resolved.  Moreover, it may be that Plaintiff will obtain

     some sought-after discovery if the remaining Defendants file a motion for summary judgment and

accompanying exhibits, with which these Defendants shall also serve Plaintiff.[11]  For these reasons, Plaintiff's motion to compel (Docket No. 30) is DENIED as premature.  The parties are directed to abide by the scheduling order to complete discovery outlined below.

### 2.    Motion to Lift Stay on Discovery

As mentioned above, the Court granted Defendants' motion to stay discovery pending resolution of their motion to dismiss.  Plaintiff has since filed a motion to lift the stay of discovery.  As the Court, by the instant Order, has now resolved the pending motion to dismiss, Plaintiff's motion to lift the stay of discovery is GRANTED.  (Docket No. 41.)

### 3.    "Motion to Have Defendants Set a Date and Time for Plaintiff to Depose Dr. Luara [sic] Hedden"

Plaintiff filed a request for the Court to issue an Order directing Defendants to schedule a deposition of a non-party witnesses, Dr. Laurie Hedden, a physician at CTF.  (Docket No. 50.)

The district court has broad discretionary powers to control discovery.  *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).  Upon a showing of good cause, the court may deny or limit the manner, method or means of discovery where justice so requires.  *See* Fed. R. Civ. P. 26(c). Although Plaintiff is entitled to engage in discovery, the Court DENIES Plaintiff's request.  The Court finds, however, that Plaintiff's right to discovery can be accommodated by written depositions conducted pursuant to Federal Rule of Civil Procedure 31.  Under this rule, Plaintiff may propound in written form the very same questions he would have asked orally.  As with oral depositions, parties as well as non-parties may be examined by way of written depositions. Fed. R. Civ. P. 31(a)(1).  Typically, a deponent answers written deposition questions orally, in the presence of a court officer.  *See* Fed. R. Civ. P. 31(b).  In the interest of justice, however, the Court will modify the procedure to allow the deponents to provide written answers to the written deposition questions. This procedure will also resolve the issue of taking the testimony under oath, for the witnesses must verify the written responses (just as answers to written interrogatories are verified).

Rule 31(a)(2)(A) limits to ten the number of persons who may be deposed by written

---

[11] As explained above, the Court has denied Defendants' request for qualified immunity as to Plaintiff's claim relating to Defendants Fernandez, Ellis and Delgado's handing of log no. CTF HC 12037007.  Instead, the Court directed these Defendants to file a motion for summary judgment and set a new briefing schedule for the parties.

19

1   questions without permission of the Court.  Plaintiff shall not propound written deposition questions

2   to more than ten persons without the permission of the Court.

3       If Plaintiff seeks to serve subpoenas upon non-parties to ensure that they respond to the

4   written deposition questions he shall comply with the requirements of Rule 31(a)(1).  In addition,

5   Plaintiff shall comply with the requirements of Rule 31(a)(3) by serving the requisite information

6   upon Defendants' counsel.

7       Plaintiff shall serve the witnesses with his written deposition questions within **thirty-five**

8   **(35) days** of the date of this Order.  Answers and follow-up depositions must comply with the time

9   limits set forth in Rule 31.

10      **D.    "Motion to Request Permission to File Supplemental Complaint"**

11      Plaintiff has filed a motion entitled, "Motion to Request Permission to File Supplemental

12  Complaint," in which he seeks leave to add new allegations and claims to his complaint by filing a

13  113-page "Supplemental Complaint."  (Docket No. 34, 34-1, 34-2.)

14      Under the Federal Rules of Civil Procedure, a plaintiff generally may amend his complaint

15  once as a matter of course within 21 days after the service of a motion filed under Federal Rule of

16  Civil Procedure 12(b).  *See* Fed. R. Civ. P. 15(a)(1)(B).  A party also may amend its pleading with

17  the court's leave, which should be given freely "when justice so requires."  *See* Fed. R. Civ. P.

18  15(a)(2).  Discretion to deny leave to amend, however, is "particularly broad where plaintiff has

19  previously amended the complaint."  *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian*

20  *Reservation v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (citation and internal quotation

21  omitted).

22      The Court notes that Plaintiff's handwritten "Supplemental Complaint" is thirteen pages long

23  and contains 100 pages of exhibits.  Plaintiff seeks to add new claims that were not in the original

24  complaint and outside the scope of permissible amendments ordered by the Court.

25      This action was filed on November 27, 2012, more than a year ago.  Plaintiff original

26  complaint, which was fifty-three pages long, pertains to a specific set of events and a limited number

27  of Defendants who have been served upon an initial review by the Court.  While Plaintiff has had

28  the opportunity to file proper amendments to his complaint prior to the Court's Order of Service and

**United States District Court**
For the Northern District of California

1    Defendants' filing of their dispositive motion, he has failed to so.  Instead, Plaintiff now presents the

2    Court with another lengthy 113-page document.  The Court finds that it is in the interests of justice

3    and judicial efficiency to DENY Plaintiff's request for leave to file his supplemental complaint.

4    (Docket No. 34.)  In addition, Plaintiff's request for the Court to screen his supplemental complaint

5    is also DENIED.  (Docket No. 41.)

6              **E.      Request for Preliminary Injunction**

7              Plaintiff has filed a request for a preliminary injunction concerning the medical treatment he

8    is receiving for his severe back pain.  (Docket Nos. 14, 16.)[12]  Defendants have filed an opposition to

9    his motion.  Plaintiff has filed a reply to the opposition.

10                       **1.      Standard of Review**

11             The PLRA restricts the power of the district court to grant prospective relief in any action

12   involving prison conditions.  *See* 18 U.S.C. § 3626(a); *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th

13   Cir. 1998).  Section 3626(a)(2) applies specifically to preliminary injunctive relief.  *See* 18 U.S.C.

14   § 3626(a)(2).  In civil actions with respect to prison conditions it permits the court to enter a

15   temporary restraining order ("TRO") or preliminary injunction "to the extent otherwise authorized

16   by law" but also requires that such an order "must be narrowly drawn, extend no further than

17   necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive

18   means necessary to correct that harm."  *Id.*

19             Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary

20

21   _____

22          [12] On March 19, 2013, Plaintiff filed a motion entitled, "Motion for Defendants to Cease All
     Retaliatory Measures Agains[t] Plaintiff" (Docket No. 14), in which he indicates that he was denied
23   his pain medication on March 13, 2013.  He asks the Court to "order Defendants to cease any and all
     retaliatory measures and reinstate all [his] medications for pain back to where they were pending the
24   outcome of this action."  (Docket No. 14 at 2-3.)  To the extent that his motion is based on any
     alleged retaliatory action stemming from the incident on March 13, 2013, his motion is DENIED
25   without prejudice to raising in the context of a new action as this allegation is based on an event that
     took place well after the filing of this action (on November 27, 2012). *See Manning v. City of*
26   *Auburn,* 953 F.2d 1355, 1359-60 (11th Cir. 1992) (supplemental pleadings setting forth occurrences
     or events which happened after the date of the original complaint are optional; claims not filed in a
27   supplemental complaint may be filed in a separate lawsuit).  As to Plaintiff's request relating to his
     pain medication, the Court notes that he filed his motion for a preliminary injunction on April 8,
28   2013 (Docket No. 16), in which he makes similar requests relating to treatment for his severe back
     pain.  Therefore, the Court construes both motions (Docket Nos. 14, 16) as Plaintiff's request for
     preliminary injunction.

United States District Court

For the Northern District of California

1    injunction or TRO.  The standard for issuing a TRO is similar to that required for a preliminary

2    injunction.  *See Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008

3    (9th Cir. 1981) (Ferguson, J., dissenting).  "A plaintiff seeking a preliminary injunction must

4    establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

5    absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

6    the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  This

7    standard replaces the previous tests for preliminary injunctions that had been used in the Ninth

8    Circuit.  *American Trucking Association v. Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

9                          **2.      Defendants' Arguments**

10           In conjunction with their points and authorities in opposition to the request for a preliminary

11   injunction, Defendants provide a declaration from Dr. Hedden.  In reliance upon this document,

12   Defendants argue that Plaintiff does not meet the standard for preliminary injunctive relief.

13                          **a.      Probable Success on the Merits**

14           First, Defendants argue that Plaintiff has not established probable success on the merits with

15   respect to his claim of deliberate indifference to his serious medical needs.  Specifically, he has not

16   established that Defendants have acted with a sufficiently culpable state of mind, that is, knowingly

17   disregarding an excessive risk to inmate health.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

18   In support of their argument, Defendants rely upon Plaintiff's medical records, which were examined

19   by Dr. Hedden, and reveal the following: Plaintiff's continuous and ongoing history of medical

20   appointments with CTF medical staff (including twelve appointments with his PCP from January

21   2012 to November 2012), treatment with "appropriate pain management for [Plaintiff's] back

22   condition"; the 2012 x-ray of his thoracic spine showing"showed chronic compression fractures,

23   unchanged from 2009"; a 2012 American with Disabilities Act evaluation indicating physical

24   therapy was provided on September 19, 2012 and October 10, 2012; and the results after Plaintiff

25   underwent an MRI on March 15, 2013.  (Declaration of Dr. Laurie Hedden, Docket No. 36 ¶¶ 4-11.)

26   As such, Defendants argue that Plaintiff will not likely be successful on the merits of his deliberate

27   indifference to medical care lawsuit.

28

**b.    Irreparable Injury**

Defendants also maintain that Plaintiff cannot show irreparable injury justifying the relief sought in the form of accommodations for his alleged lower back condition.  They argue that although Plaintiff claims that he was improperly denied these accommodations, his medical evidence shows that he received appropriate pain management and medical care during the time period alleged in his complaint.  They also argue that Dr. Hedden examined Plaintiff on July 22 and 23, 2013, and she stated that he "presented with tenderness on palpation of his back but his exam was otherwise normal . . . [and] [h]is gait was normal."  (*Id.* ¶ 17.)  Dr. Hedden also opined that based on her examination of Plaintiff and her review of his medical records that "an MRI, cane, lower bunk, lower-tier cell assignment, or double-mattress were not medically necessary during the alleged time period."  (*Id.* ¶ 9.)

**3.    Conclusion**

Based on the arguments and supporting evidence set forth by Defendants, the Court finds that Plaintiff does not meet the requirements for preliminary injunctive relief pending disposition of his claims.  In his reply to Defendants' opposition to his motion for a preliminary injunction, Plaintiff informs the Court that he is receiving ongoing medical attention from physicians at CTF and that he even had an appointment on August 23, 2013 with a specialist who is a "nuero[sic]-surgeon."  (Reply at 4.)  While Plaintiff claims that the specialist has "recommended an operation to relieve the pressure on Plaintiff spinal cord" (*id.*), there is no evidence that such a surgery is necessary to ensure that he will not suffer irreparable harm.  Moreover, based on the record at this point, the Court cannot say that he has shown probable success with respect to his remaining allegations of deliberate indifference.  Accordingly, the request for a preliminary injunction is DENIED.  (Docket Nos. 14, 16.)

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.    Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust available administrative remedies is GRANTED IN PART AND DENIED IN PART.  Defendants' request for qualified immunity is DENIED without prejudice.  (Docket Nos. 24, 44)

2.      Plaintiff's "Motion for a Stay of Defendants['] Tampering With Plaintiff's Pain Medication," is DENIED as moot.  (Docket No. 12.)

3.      Plaintiff's "Motion Ordering Defendants to Reply to Complaint" is DENIED as moot. (Docket No. 13.)

4.      Plaintiff's motion for a default judgment as to his claims against Defendant Ellis is DENIED.  (Docket No. 21.)

5.      Plaintiff's motion to compel discovery (Docket No. 30) is DENIED as premature. The parties are directed to abide by the scheduling order to complete discovery outlined below.

6.      Plaintiff's motion to lift the stay of discovery is GRANTED.  (Docket No. 41.)

7.      Plaintiff's request for leave to file his supplemental complaint and his request for the Court to screen his supplemental complaint are DENIED.  (Docket Nos. 34, 41.)

8.      Plaintiff's "Motion to Have Defendants Set a Date and Time for Plaintiff to Depose Dr. Luara [sic] Hedden" is DENIED.  (Docket No. 50.)  Plaintiff's right to discovery can be accommodated by written depositions conducted pursuant to Rule 31, as explained above.  Plaintiff shall serve any witnesses with his written deposition questions within **thirty-five (35) days** of the date of this Order.  Answers and follow-up depositions must comply with the time limits set forth in Rule 31.

9.      Plaintiff's request for a preliminary injunction is DENIED.  (Docket Nos. 14, 16.)

10.      To the extent that Plaintiff's "Motion for Defendants to Cease All Retaliatory Measures Agains[t] Plaintiff" (Docket No. 14) is based on any alleged retaliatory action stemming from the incident on March 13, 2013, his motion is DENIED without prejudice to raising in the context of a new action as this allegation is based on an event that took place well after the filing of this action (on November 27, 2012).

11.      Defendants' attorney, Trace O. Maiorino, is ORDERED TO SHOW CAUSE why he should not be sanctioned in an amount of $250.00 for misrepresenting the record to the Court, as explained above.  *See supra* notes 5, 6.  A hearing on this Order to Show Cause will be held on **Friday, April 25, 2014** on the Court's 9:01 a.m. Calendar, in the Federal Courthouse, 1301 Clay Street, Oakland, California, in Courtroom 5.  Attorney Maiorino must file a written response to this

Order to Show Cause by **Friday, April 11, 2014**, if he contests it.  A telephonic appearance by Plaintiff may be permitted at the hearing if it goes forward.  Once the Court reviews the written response, it will determine whether to vacate the hearing or proceed.  Attorney Maiorino must personally appear at the hearing.

Failure to file a timely written response will be deemed an admission that no good cause exists for Attorney Maiorino for misrepresenting the record to the Court, sanctions will be imposed, and the order will issue without further proceedings.

12.     The parties shall abide by the following briefing schedule:

a.     No later than **twenty-eight (28) days** from the date of this Order, Defendants shall file a motion for summary judgment as to the only remaining Eighth Amendment claim relating to Defendants Fernandez, Ellis and Delgado's handing of log no. CTF HC 12037007.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

b.     Plaintiff's opposition to the motion for summary judgment shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which the aforementioned Defendants' motion is filed.

c.     If Defendants wish to file a reply brief, they shall do so no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

d.     The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

13.     In the interests of justice, the Court sets a discovery cut-off date of **twenty-eight (28) days** from the date Plaintiff is served with Defendants' motion for summary judgment.  If Plaintiff attempts to meet and confer with Defendants regarding requests for the production of documents or any other discovery requests and is not satisfied with the result he may file a renewed discovery motion.  But in no event shall he file such a motion until after he has reviewed Defendants' motion for summary judgment.

United States District Court
For the Northern District of California

25

1        14.      This Order terminates Docket nos. 12, 13, 14, 16, 21, 24, 30, 34, 41, 44 and 50.

2   IT IS SO ORDERED.

3

DATED:     March 18, 2014

4                                  **YVONNE GONZALEZ ROGERS**

                               **UNITED STATES DISTRICT COURT JUDGE**

**United States District Court**
For the Northern District of California