UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER T. JACKSON,<br><br>  Plaintiff,<br><br>  v.<br><br>D. BRIGHT, et al.,<br><br>  Defendants. | Case No. 12-cv-06020-YGR  (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS** |

On November 27, 2012, Plaintiff Christopher T. Jackson, a state prisoner incarcerated at that California Training Facility ("CTF"), filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that prison officials at CTF were deliberately indifferent to his serious medical needs. Specifically, he asserted that Defendants acted with deliberate indifference to his serious medical needs in handling his 602 inmate appeals ("602 appeals"), log nos. CTF HC 12037007 and CTF HC 12037457.

The parties are presently before the Court on Defendants' Motion for Summary Judgment. Plaintiff has filed an opposition, and Defendants have filed a reply. Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendants' motion.

I.  **FACTUAL AND PROCEDURAL BACKGROUNDS**

  A.  **Procedural History of Eighth Amendment Claim**

In an Order dated February 13, 2013, the Court summarized the facts relating to the constitutional violations alleged by Plaintiff and found that he stated a cognizable claim, as follows:

> Plaintiff's allegation that he suffers from "severe pain in his back caused by old injuries"—including "fractur[ing] his back in two places and in 2003 re-injur[ing] his back"—supports an inference that he has serious medical needs. (Compl. at 3.) Liberally construed, Plaintiff's allegations that prison medical staff failed to provide adequate medical treatment for his condition—while he was housed there in 2012—state a cognizable deliberate indifference claim against the named Defendants.

Dkt. 5 at 2. Specifically, the Court found Plaintiff stated a cognizable Eighth Amendment claim against the following Defendants at CTF: Chief Physician and Surgeon D. Bright; Chief Medical

Officer ("CMO") R. Delgado; Chief Executive Officer ("CEO") G. Ellis; Registered Nurse L. Fernandez; and Physicians Anise Adams and R. Javate. The Court ordered service of the complaint on these Defendants. Otherwise, the claims against the Doe Defendants were dismissed without prejudice.

Thereafter, Defendants filed a motion to dismiss based on failure to exhaust administrative remedies before filing this lawsuit. Dkt. 24.

In an Order dated March 18, 2014, the Court granted in part and denied in part the motion to dismiss. Dkt. 55. The Court denied without prejudice Plaintiff's claim relating to Defendant Javate's handling of log no. CTF HC 12037457. *Id.* at 13, 14. The Court also denied without prejudice Plaintiff's claim relating to Defendants Bright, Adams and Ellis's failure to adhere to the granted 602 appeal in log no. CTF HC 12037457. *Id.* at 15. However, the Court denied the motion to dismiss as to Defendants Fernandez, Ellis, and Delgado's handling of log no. CTF HC 12037007. *Id.* at 12. The Court stated "Defendants shall file a motion for summary judgment as to the only remaining Eighth Amendment claim relating to Defendants Fernandez, Ellis and Delgado's handling of log no. CTF HC 12037007." *Id.* at 25.

Plaintiff has since filed a request for the Court to reconsider its dismissal of his claims against Defendants Bright, Javate and Adams. Dkt. 56.

Also, as mentioned above, Defendants Fernandez, Delgado and Ellis have filed their motion for summary judgment concerning the handling of log no. CTF HC 12037007. Dkt. 58.

Furthermore, Plaintiff has filed a motion for appointment of counsel. Dkt. 68. He has also filed a motion entitled, "Motion to District Judge Yvonne Gonzale[z] Rogers to Allow Plaintiff an Extension of Discovery/Motion for Court to Answer Plaintiff's Motions." Dkt. 70. In that motion, Plaintiff requests for leave to depose Dr. Laura Hedder and Neurosurgeon Theodore Kaltzmar. Plaintiff also requests that the Court rule on the pending motions, which the Court GRANTS as it will now resolve the pending motions below.

### B.   Plaintiff's Relevant 602 Appeals

The following facts relating to the Plaintiff's relevant 602 appeals are taken from the

Court's March 18, 2014 Order:

### 1. 602 Appeal Log No. CTF HC 12037007

On March 15, 2012, Plaintiff filed a 602 inmate appeal ("602 appeal") requesting to "see a specialist to get [an] MRI." ([Maiorino Decl.], Ex. H. at 11.) In that 602 appeal—which was given log no. CTF HC 12037007—Plaintiff explained that he "had x-rays in 2009 that showed DDD and old comp. fracture." (*Id.*) Plaintiff also stated that in 2003, he was "slammed on [his] back and head by officers while [he] was handcuffed behind his back" during which he "sustained more injury to [his] back along with brain damage that led to [him] losing his peri[ph]eral vision." (*Id.* at 9, 11.) Plaintiff claimed he was taking 10 mg. of methadone twice a day, but it "doesn't help very much." (*Id.* at 9.) He added that he was also taking Nortriptyline, but it "led [him] to having anxiety attacks." (*Id.*) He claimed that on a pain scale from one to ten, where one shows the least pain, his back pain is "8 most of the time." (*Id.*) Therefore, Plaintiff requested the following: (1) a specialist referral; (2) a diagnostic MRI; (3) a lower bunk chrono; and (4) a medication renewal/adjustment.

On April 6, 2012, Defendant Fernandez interviewed Plaintiff about his 602 appeal, and then, on April 10, 2012, responded to it at the first level of review. According [to] the written first level review response, Defendant Fernandez "partially granted" Plaintiff's 602 appeal. Specifically, Defendant Fernandez "partially granted" Plaintiff's request for an MRI by stating that his primary care provider ("PCP") had "determined that [an] x-ray [was] needed to determine the discomfort in the thoracic area . . . ." (*Id.* at 7.) Defendant Fernandez also "partially granted" the medication renewal/adjustment by "discontinuing medication Nortriptyline due to increasing anxiety [and] [m]ethadone was continued." (*Id.*) Plaintiff's remaining requests were denied because there were "no orders for a specialist or referral" and he "did not meet the criteria for [a] lower bunk chrono." (*Id.*)

On April 14, 2012, Plaintiff appealed the first level review response to his 602 appeal, specifically complaining about the denial of his requests for an MRI and for a referral to a specialist. (*Id.* at 10.)

On May 17, 2012, Defendants Delgado and Ellis "partially granted" his appeal at the second level of review. Specifically, the second level review response states that Defendant Delgado reviewed Plaintiff's appeal and his Unit Health Record ("UHR") to reveal the following:

No medical indication to see a specialist.  Denied.
No medical indication for an MRI.  Denied.
No medical indication for a lower bunk.  Denied.
Request for medical renewal.  Partially granted.
Methadone was renewed and increased on 5/3/12.  Granted.

3

(*Id.* at 6.)

On May 23, 2012, Plaintiff appealed the second level review response to his 602 appeal, again stressing that he requested an MRI and complaining that his "back (spine) hurts and is causing numbness to [his] left leg and foot." (*Id.* at 10.)

On September 4, 2012, L. D. Zamora, Chief of the Inmate Correspondence and Appeals Branch, responded to Plaintiff's appeal at the third and final level of review, stating:

> . . . your appeal file and documents obtained from your [UHR] were reviewed by licensed clinical staff and revealed the following:
>
> • On June 28, 2012 and July 27, 2012, you received primary care provider (PCP) evaluations regarding your back. Your provider reviewed the lumbar spine x-rays dated April 12, 2012, and compared them to the 2009 films with the notation of "no changes since 2009."
> • On July 27, 2012, you signed a pain management contract regarding methadone.
> • There is no indication your PCP considers a specialist referral or MRI is medically necessary at this time.
> • Your primary profile reveals active orders for methadone.

(*Id.* at 4.) Chief Zamora denied Plaintiff's appeal at the third level of review upon concluding as follows: ". . . there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated and you are receiving treatment deemed medically necessary." (*Id.*)

### 2.     602 Appeal Log No. CTF HC 12037457

On June 14, 2012, Plaintiff filed another 602 appeal—which was given log no. CTF HC 12037457—complaining about CTF medical staff's "failure to treat [his] back pain or let Dr. accommodate." (Compl., Ex. B at 1.) Specifically, Plaintiff claimed that his doctors at CTF have been granting him California Department of Corrections and Rehabilitation ("CDCR") 7410 comprehensive accommodation chronos "to allow [him] some ease of discomfort that [he] ha[s] due to severe back pain." (*Id.*) However, Plaintiff complained that "[e]verytime [his] Dr. fills out the [CDCR] 7410, it[']s denied by the CMO. (*Id.* at 2.) Plaintiff added that "the CMO continues to deny any treatment (MRI, specialist, cane, medical mattress, lower bunk) for no reason." (*Id.*) Plaintiff specifically named Defendants Delgado and Bright as those responsible for denying him medical care, stating: "The CMO R. Delgado and D. Bright are allowing me to suffer and stay in pain deliberately." (*Id.*)

On June 21, 2012, Defendant Javate interviewed Plaintiff,

4

and on June 25, 2012, "granted" Plaintiff's appeal at the first level of review, stating as follows:

> . . . when [Defendant Javate] called you to the waiting area, you stood up from the bench without difficulty. You ambulated without a limp or assistive device. You claimed you have chronic lower back pain with occasional numbness of left leg. You stated you have had several x-rays with a recent one on 4/12/12. Your [PCP] Dr. Kalisher discussed criteria for lover bunk such as "severe." Thoracic spine x-ray result dated 4/12/12 was read to you . . . . Based on mild to moderate x-ray findings, you do not meet the criteria for lower bunk. Methadone was recently increased from 10 mg in morning, 5 mg in afternoon and 10 mg at bedtime.
>
> You verbally expressed withdrawal for an extra mattress and you stated you were not necessarily concerned about the double mattress. You claimed you had fallen (6) times in the past month due to left leg numbness and mid-lower back pain. You denied seeking any medical help during these incidents, stated "it is all during first watch." It is noted that you do not have significant disability; therefore you do not meet the criteria for [a] cane. You left the clinic walking in a fast pace.

(*Id.*) Defendant Javate concluded, "Your request that your doctor have the authority to prescribe or give you what it necessary to treat you in granted." (*Id.* at 3.) In addition, Defendant Javate stated, "[Plaintiff's] request that the CMO's allow the doctors to treat their patients without interference is granted." (*Id.* at 4.)

Plaintiff did not appeal the first level review response to the higher levels of review. And, as explained above, Plaintiff claims in the instant action that Defendants did not adhere to this "fully granted" 602 appeal "in an attempt to thwart Plaintiff from receiving the treatment needed to ease or eliviate [sic] [his] pain al[]together." (*Id.* at 9.)

Dkt. 55 at 2-5 (footnotes omitted).

### C.  Defendants' Allegedly Unconstitutional Actions

Because Defendants Fernandez, Delgado and Ellis have filed the instant motion for summary judgment on the remaining deliberate indifference claim against them, and because Plaintiff has filed a motion to reconsider the Court's dismissal without prejudice of the claims against Defendants Bright, Javate and Adams, the Court finds it necessary to include the following portion from its March 18, 2014 Order outlining each Defendants' allegedly unconstitutional

5

actions:

### 1. Defendant Fernandez

Plaintiff claims that Defendant Fernandez, who is a registered nurse, "is not capable in her li[]cense and job description to grant any appeal that has to do with any subject only a Dr. or higher can permit under their li[]cence." (Compl. at 4.) However, Defendant Fernandez "still heard Plaintiff's appeal, knowing that she would have to deny it and that Plaintiff would have to continue to stay in pain." (*Id.*)

### 2. Defendant Delgado

Plaintiff claims that Defendant Delgado, as "chief physician and surgeon" has the "authority to grant an appeal that would allow an MRI, specialty consult or auxil[ia]ry accom[m]odations." (*Id.*) Plaintiff claims that Defendant Delgado was aware that Plaintiff was suffering from "severe back pain." (*Id.*) Further, Defendant Delgado was aware that "x-rays only show[ed] bone deficiencies and that there are other treatment options, [and he] should have sought one of those options." (*Id.*) Instead, Plaintiff claims that Defendant Delgado "chose to deny [his] appeal and continue to allow [him] to suffer further pain and injury." (*Id.*)

### 3. Defendants Adams, Bright, Javate and Ellis

Plaintiff claims that Defendant Adams, Bright, Javate and Ellis failed to adhere to the "fully granted" 602 appeal, log no. CTF HC 12037457. Specifically, Plaintiff claims that Defendant Javate, who granted the 602 appeal at issue—log no. CTF HC 12037457—is liable for failing to "mak[e] sure that the (602) is distributed to the right medical person[n]el so it can and will be adhered to." (*Id.* at 7.) Plaintiff claims that Defendant Ellis, as "CEO of the medical department at CTF" is liable for "allowing his medical staff to violate Plaintiff[']s rights." (*Id.*) Finally, the record shows that Plaintiff filed two 602 appeals complaining that CTF medical staff did not adhere to the granted appeal in log no. CTF HC 12037457, and that these two 602 appeals were handled by Defendants Adams, Bright and Ellis.

Dkt. 55 at 5-6.

In his verified declaration, Plaintiff claims that after "almost (2) years of appeals, falling, emergency room visits, loss of meals, loss of sleep, [and] anxiety," he "had an MRI done after being sent to the E.R. from falling when [his] back went out." Dkt. 63 at 3. He claims that he eventually saw a specialist and had to have "surgery done on his spinal cord region to alleviate the compression and to remove a significant amount of bone osteophytes [bone spurs]." *Id.* Plaintiff claims that had Defendants "chose[n] to act on [his] medical problem instead of ignoring it, they

6

would have seen the problem and could [have] fixed it." *Id.* at 3-4. Instead "they allowed [him] to suffer in severe pain for almost two years for no other reason than deliberate indifference and pure cruelty." *Id.* at 4.

## II.     MOTION FOR RECONSIDERATION

Plaintiff has moved the Court to reconsider its March 18, 2014 Order dismissing without prejudice his claims against Defendants Bright, Javate and Adams for failure to exhaust administrative remedies. Dkt. 56. As mentioned above, Plaintiff originally claimed that these Defendants did not adhere to the "fully granted" 602 appeal—log no. CTF HC 12037457. Further, the Court construes his motion to include reconsideration of the dismissal of his claim against Defendant Ellis, because that claim—relating to an alleged failure to adhere to the "fully granted" 602 appeal—was also dismissed as unexhausted. Dkt. 55 at 14-15.

In the Northern District of California, Local Rule 7-9(a) allows for the filing of motions for reconsideration only with respect to interlocutory orders made in a case prior to the entry of final judgment. *See* Civil L.R. 7-9(a). To seek reconsideration of a court order, the movant must first file a motion for leave to file a motion for reconsideration in accordance with Civil Local Rule 7-9. Local Rule 7-9 states:

> The moving party must specifically show reasonable diligence in bringing the motion and one of the following:
>
> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

In violation of the Local Rules, Plaintiff failed to first seek leave of court before filing his motion for reconsideration. On that basis alone, the Court may properly deny Plaintiff's motion.

*Tri-Valley CARES v. U.S. Dept. of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion.").

Plaintiff's failure to comply with Local Rule 7-9 notwithstanding, the Court finds no merit to his motion for reconsideration as to the dismissal of the claims against Defendants Bright, Javate, Adams and Ellis for failure to exhaust administrative remedies. Plaintiff argues that Defendants made it "impossible" for him to "appeal [log no.] CTF HC 12037457 any further," and thus he was unable to exhaust his administrative remedies. Dkt. 56 at 4. Such an argument is unavailing, as explained below.

### A.  Defendant Javate

Defendant Javate was the one who *granted* the 602 appeal at issue—log no. CTF HC 12037457. In his complaint, Plaintiff had claimed this Defendant was liable for failing to ensure that decision to fully grant this 602 appeal was distributed to the "right medical person[n]el so it can and will be adhered to." Dkt 1 at 7. However, the Court determined that Plaintiff had failed to address this allegation in a 602 appeal or to pursue this issue to the third level of review. Dkt. 55 at 13. First, Plaintiff did not appeal Defendant Javate's decision to grant the 602 appeal in log no. CTF HC 12037457. *Id.* Further, none of Plaintiff's 602 appeals (filed after Defendant Javate granted log no. CTF HC 12037457) involved Plaintiff's claim that Defendant Javate handled this grant inappropriately in any manner. *Id.* Thus, the Court found that Defendants had met their burden of proving that Plaintiff did not exhaust all available administrative remedies as to his claim against Defendant Javate. *Id.* Plaintiff's argument that Defendants made it "impossible" for him to appeal log no. CTF HC 12037457 is conclusory and unsupported. The record shows that Plaintiff, in fact, successfully filed not one but *two* other 602 appeals complaining that Defendants Bright, Adams and Ellis did not adhere to the granted 602 appeal in log no. CTF HC 12037457. Plaintiff did *not* include in his claim that Defendant Javate was also liable for allegedly failing to ensure the aforementioned adherence to the grant. Thus, Plaintiff's motion for reconsideration as to his claim against Defendant Javate fails on the merits. Accordingly, the Court DENIES

Plaintiff's motion for reconsideration as to the Court's dismissal of his claim against Defendant Javate.

### B. Defendants Bright, Adams and Ellis

In contrast to his claim against Defendant Javate above, Plaintiff *did* file two other 602 appeals—log no. CTF HC 12037888 and log no. CTF HC 12038162—complaining that Defendants Bright, Adams and Ellis did not adhere to the granted 602 appeal in log no. CTF HC 12037457. However, the Court determined that while these two appeals *were* exhausted to the third level of review, both decisions at the final level were issued on June 19, 2013—which was *after* the instant complaint was filed on November 27, 2012. Dkt. 55 at 14. Therefore, the Court found that these 602 appeals that both concluded after the instant complaint was filed did not exhaust any claim in this action. *Id.* at 15 (citing *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (An action must be dismissed unless the prisoner exhausted his available administrative remedies before he filed suit, even if the prisoner fully exhausts while the suit is pending.)).

Again, Plaintiff's claim that Defendants made it "impossible" for him to exhaust his administrative remedies is unsupported by the record. For, in fact, Plaintiff *was* able to exhaust his administrative remedies as to his claim against Defendants Bright, Adams and Ellis. However, he should have done so *prior to* filing the instant action. Without doing so, Plaintiff's claim against Defendants Bright, Adams and Ellis was properly dismissed, *see id.*, and therefore reconsideration is unwarranted. Accordingly, the Court DENIES Plaintiff's motion for reconsideration as to its dismissal of his claim against Defendants Bright, Adams and Ellis.

The Court further notes that the appropriate course of action is not to request reconsideration of the aforementioned claims, one of which was prematurely filed, but to file a *new* civil rights complaint. Because the claims were dismissed *without prejudice*, the dismissal does not bar a new action raising the same claims. As to his unexhausted claim against Defendant Javate, Plaintiff may allege facts that would warrant excusing him from complying with the exhaustion requirement. If Plaintiff chooses to file a new action including his unexhausted claim against Defendant Javate, he should describe the history of his prison grievances in sufficient

9

detail to make a prima facie case that he should be excused from exhausting.

## III. MOTION FOR SUMMARY JUDGMENT

The only remaining claim in this action is Plaintiff's claim relating to Defendants Fernandez, Delgado and Ellis's handling of log no. CTF HC 12037007. As mentioned above, these Defendants have filed a motion for summary judgment, which the Court now addresses.

### A. Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary

10

judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). As noted, Plaintiff has filed an opposition to Defendants' motion for summary judgment; however, the opposition is not verified and will not be considered because it was not signed under "penalty of perjury." Dkt. 62 at 15. However, Plaintiff filed a verified declaration, which will be considered. Dkt. 63. In addition, because the complaint is verified, dkt. 1 at 10, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### B.   Deliberate Indifference Under the Eighth Amendment

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment— and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. To satisfy the subjective element, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In order to prevail on a claim of deliberate indifference to medical needs, a Plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk

11

to Plaintiff's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id*.; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**C.     Analysis**

Plaintiff alleges that the Defendants Fernandez, Delgado and Ellis, who handled log no. CTF HC 12037007, were deliberately indifferent to his serious medical needs for failing to grant him the requested relief.   Dkt. 1 at 3.

Defendants do not dispute that, during the relevant time period, Plaintiff had a serious medical need based on his aforementioned back condition. Dkt. 58 at 4.  Instead, Defendants assume that "[e]ven if the Court found that Plaintiff's alleged condition constitutes a serious medical need," they argue that they are entitled to summary judgment because "they were not deliberately indifferent to his needs." *Id.*   Specifically, Defendants argue that they are entitled to summary judgment because Plaintiff has not set forth sufficient evidence for a reasonable jury to find that any of them, i.e., Defendants Fernandez, Delgado or Ellis, were deliberately indifferent to Plaintiff's serious medical needs.  Defendants claim that the undisputed facts show that they were not deliberately indifferent to Plaintiff's serious medical needs and that they are entitled to qualified immunity

As explained above, in the 602 appeal at issue, Plaintiff sought a referral to a specialist, an MRI, a lower bunk chrono, and a medication renewal/adjustment.  Defendant Fernandez was involved in reviewing Plaintiff's 602 appeal at the first-level.  Meanwhile, Defendants Delgado and Ellis were involved in reviewing the appeal at the second-level.  These Defendants partially granted Plaintiff's 602 appeal upon determining that he was receiving proper medical treatment, but that his medication needed renewal/adjustment.  In partially denying the 602 appeal, they determined that his remaining requested relief was not medically necessary, including his requests for a referral to a specialist, an MRI, and a lower bunk chrono.

First, the Court finds that Plaintiff's disagreement with Defendants Fernandez, Delgado

12

and Ellis's handling of his 602 appeal is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1059-60; *Franklin*, 662 F.2d at 1344.

Second, to the extent that Plaintiff seeks relief against the Fernandez, Delgado and Ellis for failing to *grant* his 602 appeal, such a claim must fail. Prisoners have no absolute constitutional right to have their grievances heard in a prison administrative appeal system. Although state statutes or regulations may give rise to constitutionally-protected liberty interests that cannot be taken away without due process of law, California prison regulations do not create such a liberty interest in an inmate grievance procedure. The regulations grant prisoners a purely procedural right and set forth no substantive standards, *see* Cal. Code Regs. tit. 15, § 3084 et seq. (applicable to state prisons), and such provisions cannot form the basis of a constitutionally cognizable liberty interest. *See also Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Finally, as further explained below, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that Defendants Fernandez, Delgado and Ellis's actions rose to the level of deliberate indifference to his serious medical needs. The Court will specifically address Plaintiff's deliberate indifference claim against each of these Defendants below.

### 1. Defendants Fernandez and Delgado

The undisputed evidence shows that Defendants Fernandez and Delgado did not subject Plaintiff to medical deliberate indifference in violation of the Eighth Amendment by improperly handling his 602 appeal. To the contrary, before responding to the 602 appeal, these Defendants reviewed his medical records and CDCR policy to determine if his requests were medically necessary. Fernandez Decl. at 3:13-17; Delgado Decl. at 2:17-19, 2:21-25. Additionally, Defendant Fernandez personally interviewed Plaintiff on April 6, 2012. Fernandez Decl. at 2:21-22. In fact, on the very same date of his interview with Defendant Fernandez, Plaintiff also had a medical appointment with his PCP. Fernandez Decl. at 3:1-2. During the interview, Defendant Fernandez explained to Plaintiff that he could raise his medical concerns with his PCP during his

13

medical appointment. *Id.* at 3:6-8. As a registered nurse, Defendant Fernandez could not change Plaintiff's prescription medications or order medical procedures that had not been authorized by his PCP. *Id.* at 3:3-5. Furthermore, after reviewing his medical records for the alleged time period, Defendant Delgado opined that Plaintiff was receiving appropriate medical care from his PCP. Delgado Decl. at 4:8-11.

Defendants Fernandez and Delgado argue that because Plaintiff was receiving appropriate medical treatment from his PCP, he cannot claim that he was denied appropriate medical care by the administrative appeals process. Dkt. 58 at 8. However, the more appropriate question is whether Plaintiff has set forth sufficient evidence for a reasonable jury to find that Defendants Fernandez and Delgado's denial of the specific relief requested in his 602 appeal amounted to deliberate indifference to his serious medical needs. In order to answer this question, the Court considers the undisputed evidence with respect to Plaintiff's requested relief, below.

### a. Request for Referral to Specialist

Defendants argue that the undisputed evidence shows that Plaintiff's request for a referral to a specialist was properly denied by Defendants Fernandez and Delgado at the first-level and second-level, respectively. Dkt. 58 at 5. As noted by these Defendants, Plaintiff's PCP did not request a referral to a medical specialist at the time they prepared their response to his 602 appeal. Fernandez Decl. at 3:19-22; Delgado Decl. at 2:23. As noted by Defendant Delgado following his review of medical records, Plaintiff's condition was being controlled by the current regimen, which included Methadone and Nortiptylene. Delgado Decl. at 3:15-17. Moreover, upon review of the pertinent medical records, Defendant Delgado found no medical evidence that a referral to a specialist was medically necessary at the time he responded to Plaintiff's 602 appeal. Delgado Decl. at 2:21-25. Therefore, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendants Fernandez and Delgado's denial of his request for a referral to a specialist amounted to deliberate indifference to his serious medical needs.

### b. Request for an MRI

Similarly, Defendants argue that the undisputed evidence shows that an MRI was not

14

medically necessary at the time Defendants Fernandez and Delgado's responses to the 602 appeal were prepared. Dkt. 58 at 5-6. Instead, the record shows that Plaintiff's PCP had requested an x-ray, not an MRI, to determine the discomfort in the thoracic area. Delgado Decl. at 3:9-11. Upon conducting his own review of Plaintiff's medical records, Defendant Delgado found no clinical findings to suggest a need for an MRI. *Id.* at 3:11-12. Defendant Delgado opined that it would not have been appropriate to approve an MRI request before the results of the x-ray were available. *Id.* at 3:21-22. Furthermore, since the x-ray revealed no change in condition—when compared to an earlier x-ray—there was no medical indication that an MRI was necessary. *Id.* at 3:23-24. Therefore, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendants Fernandez and Delgado's denial of his request for an MRI amounted to deliberate indifference to his serious medical needs.

### c. Lower Bunk Chrono

Defendants argue that the undisputed evidence shows that Plaintiff's request for a lower bunk chrono was properly denied at the time Defendants Fernandez and Delgado's responses to the 602 appeal were prepared. Dkt. 58 at 6. The Inmate Medical Services Policies and Procedures ("IMSPP") governs the delivery of medical care received by patient-inmates in the custody of the CDCR. Fernandez Decl. at 3:24-25; Delgado Decl. at 2:27-28. All of the IMSPP policies and procedures are designed to meet the minimum level of care necessary to provide constitutionally adequate medical care to patient-inmates in the State of California. Fernandez Decl. at 3:25-27; Delgado Decl. at 2:28, 3:1-2. The guidelines for issuing medically necessary lower bunk assignments to inmates are located in the IMSPP, Volume 4, Chapter 23, "Comprehensive Accommodation Chronos." Fernandez Decl. at 3:23-28, Ex. B at 4-23-2; Delgado Decl. at 3:2-8, Ex. B at 4-23-2. Based on a review of these guidelines and Plaintiff's medical records, Defendants Fernandez and Delgado determined that he did not meet the criteria for a lower bunk chrono at the time they responded to his 602 appeal. *Id.* Therefore, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendants Fernandez and Delgado's denial of his request for a lower bunk chrono amounted to deliberate indifference to his serious medical

needs.

#### d. Medication Renewal/Adjustment

Finally, Defendants argue that the undisputed evidence shows that Plaintiff's 602 appeal concerning his medication renewal/adjustment was granted. Dkt. 58 at 6; Delgado Decl. 3: 27-28. As noted in the 602 appeal, Plaintiff complained that his Methadone dosage did not adequately address his pain. Fernandez Decl. at 2:25-26, Ex. A; Delgado Decl. at 2:16-17, Ex. A. The dosage was increased appropriately to manage Plaintiff's lower back pain that he reported. Delgado Decl. at 3:27-28, 4:1. Moreover, Plaintiff's prescription for Nortriptyline was discontinued because Plaintiff complained of increased anxiety. *Id.* at 4:1-4.

In sum, Plaintiff's claim cannot withstand summary judgment because a prison official is only liable under the Eighth Amendment if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Based on the aforementioned undisputed facts, Defendants Fernandez and Delgado have shown that they took all reasonable measures when responding to Plaintiff's 602 appeal. However, Plaintiff argues that an MRI or a referral to a specialist would have led to other course of treatments, and that these Defendants' handling of his 602 appeal was medically unacceptable and led to greater pain that lingered for an additional two years. Dkt. 63 at 3-4. Plaintiff argues that he would not have suffered "severe pain for almost two years" but for these Defendants' deliberate indifference, and that he eventually was referred to a specialist, who found it necessary for Plaintiff to undergo back surgery. *Id*. The Court finds that Plaintiff's argument only shows a difference of medical opinion, i.e., if these Defendants had handled the appeal differently and granted him different treatment, then he would not have suffered more unnecessary pain. Again, to the extent that Plaintiff disagrees with their conclusions, this is not enough to show a triable issue of material fact because a difference of medical opinion as to the urgency and treatment of his medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1059-60; *Franklin*, 662 F.2d at 1344; *see also Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (citing *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir.

16

1981); *Estelle*, 429 U.S. at 107.  Furthermore, the Court notes that Plaintiff assumes that these Defendants' denial of his requests for an MRI or a referral to a specialist worsened his condition, eventually causing him to suffer more pain that led to his need for back surgery.  However, Plaintiff puts forth no facts or evidence to support this theory.  Plaintiff merely introduces a sworn declaration stating that after two years, he received an MRI and had back surgery after he was referred to a specialist, who had recommended the surgery.  Dkt. 63 at 3.  Plaintiff's conclusory allegation—that these Defendants' handling of his 602 appeal relating to his course of treatment caused him to suffer lingering pain for an additional two years—is not supported by any medical evidence.  Plaintiff's conclusory allegations unsupported by factual data are insufficient to defeat Defendants' motion for summary judgment.  *Cf. Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding the district court did not err in granting summary judgment because plaintiff failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable).  Instead, the record shows that, at the time Plaintiff had requested for an MRI to be ordered and for a referral to a specialist, Defendants Fernandez and Delgado indicated that neither were medically necessary *at the time they reviewed his appeal*.  Specifically, Defendant Delgado noted that an x-ray had already been ordered to determine the discomfort in the thoracic area.  Delgado Decl. at 3:9-11.  Because the x-ray revealed no change in Plaintiff's condition, there was no medical indication that an MRI was necessary.  *Id.* at 3:23-24.  Furthermore, Plaintiff's PCP did not request a referral to a medical specialist at the time they prepared their response to his 602 appeal.  Fernandez Decl. at 3:19-22; Delgado Decl. at 2:23.  As such, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that these Defendants denial of his requests for an MRI and a referral to a specialist was "medically unacceptable under the circumstances" or in "conscious disregard of an excessive risk to [his] health."  *See Toguchi*, 391 F.3d at 1058-60.  Accordingly, there is no triable issue of fact as to Plaintiff's claim for deliberate indifference to serious medical needs against Defendants Fernandez and Delgado.  Therefore, Defendants Fernandez and Delgado are entitled to summary judgment as

17

a matter of law. *See Celotex*, 477 U.S. at 323.[1]

### 2. Defendant Ellis

Plaintiff alleges that Defendant Ellis was deliberately indifferent to his serious medical needs when he handled the appeal at issue. However, the record shows that Defendant Ellis is not a physician, but the CEO at CTF; therefore, he only had administrative responsibilities concerning Plaintiff's 602 appeal. Ellis Decl. at 1, 22-24; 2:14-16. Defendant Ellis did not review Plaintiff's medical file. *Id.* Instead, Defendant Ellis participated in the second-level review of the 602 appeal to ensure that the deadlines were met and that issues raised by Plaintiff had been addressed by the response. *Id.* at 2:8-10. Defendant Ellis's role in the inmate appeal process was limited to administrative review of the institutional response to ensure the appeals process is in compliance with the California Code of Regulations, Title 15; the Inmate Medical Services Policies and Procedures; and CDCR's Department Operations Manual. *Id.* at 2:5-8. Furthermore, at the time he signed the 602 appeal, Defendant Ellis understood that Defendant Delgado had reviewed pertinent portions of Plaintiff's medical records; and that Plaintiff was assigned a PCP at the prison for his medical needs. *Id.* at 2:12-14. Because Defendant Ellis relied on the expertise of medical physicians, did not personally review Plaintiff's medical records, and served in an administrative capacity, there is no evidence in the record sufficient for a reasonable jury to find that Defendant Ellis's denial of the 602 appeal at issue amounted to deliberate indifference to Plaintiff's serious medical. It simply cannot be said that by signing off on the denial Defendant Ellis disregarded a substantial risk of harm to Plaintiff's health by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837; *see also Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (prison medical officer without expertise in specific field who denies inmate appeal for medical care after it was reviewed by two qualified medical officials does not demonstrate wanton infliction of unnecessary pain). Accordingly, there is no triable issue of fact

---

[1] Defendants Fernandez and Delgado are also entitled to qualified immunity because a reasonable prison doctor could have believed that their conduct was lawful under the circumstances. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). A reasonable prison doctor could have believed that their denial of Plaintiff's aforementioned requests was medically acceptable and not an excessive risk to his health.

as to Plaintiff's deliberate indifference claim against Defendant Ellis. Therefore, Defendant Ellis is entitled to summary judgment as a matter of law. *See Celotex*, 477 U.S. at 323.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion for reconsideration as to the Court's dismissal of his claim against Defendants Javate, Bright, Adams and Ellis—relating to their failure to adhere to the granted 602 appeal in log no. CTF HC 12037457—is DENIED. Dkt. 56.

2. Defendants Fernandez, Delgado and Ellis's motion for summary judgment as to Plaintiff's remaining deliberate indifference claim—relating to their handling of log no. CTF HC 12037007—is GRANTED. Dkt. 58.

3. The Clerk of the Court shall enter judgment, close the file and terminate as moot any remaining pending motions, including Plaintiff's motion for appointment of counsel and his "Motion to District Judge Yvonne Gonzale[z] Rogers to Allow Plaintiff an Extension of Discovery" (dkts. 68, 70).

4. This Order terminates Docket Nos. 56, 58, 68 and 70.

IT IS SO ORDERED.

Dated: March 26, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[2] Defendant Ellis is also entitled to qualified immunity because a reasonable prison official could have believed that his conduct was lawful. *See Saucier*, 533 U.S. at 201-02.